IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALEXANDER B. FORSSELL, I, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-94-STE |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge

(ALJ) issued an unfavorable decision. (TR. 11-22). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date of December 11, 2015. (TR. 13). At step two, the ALJ determined Mr. Forssell had the following severe impairments: schizophrenia and bipolar disorder. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 14).

At step four, the ALJ concluded that Mr. Forssell had no past relevant work,[1] but retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can relate to supervisors and co-workers on a superficial work basis. The claimant can respond to usual work situations. The claimant can have no contact with the general public.

(TR. 15). At step five, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could

---

[1] (TR. 20).

perform. (TR. 34). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 35). The ALJ adopted the testimony of the VE and concluded that Mr. Forssell was not disabled based on his ability to perform the identified jobs. (TR. 21).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) the ALJ erred in evaluating the opinion from Dr. Fiona Li, Plaintiff's treating psychiatrist and (2) erred at step five.

## V. THE ALJ'S EVALUATION OF DR. LI'S OPINION

The record contains evidence of treatment notes from Dr. Li between December 7, 2015 through October 13, 2016. (TR. 252-261, 269-277). On April 12, 2016, Dr. Li completed two forms with regards to Mr. Forssell—a "Medical Source Assessment" (MSA)

3

form and a "Residual Functional Capacity Secondary to Mental Impairments" (RFC) form. (TR. 262-268). Plaintiff alleges the ALJ erred in his evaluation of Dr. Li's MSA and RFC. The Court rejects Plaintiff's argument.

### A. The ALJ's Duty in Evaluating Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 404.1527(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted). If controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; including the treatment provided and the kind of examination or testing performed; (3)

the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 416.927(c).

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at 5. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### B. Dr. Li's Opinions

The MSA form contained findings in four categories—"understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation." (TR. 262-263). Within each category, various examples of abilities were listed which Dr. Li rated on a basis of 1-5, with "1" meaning that Plaintiff was able to perform the given task with no limitation, and "5" meaning that Plaintiff had no ability to perform the designated ability on a regular, reliable, and sustained schedule. (TR. 262-263).

In the categories of "understanding and memory" and "adaptation," Dr. Li rated Plaintiff as "5" in all of the outlined areas; in the category of "sustained concentration and persistence," Dr. Li rated Plaintiff a "5" in all areas except the ability to "carry out

5

very short and simple instructions," which Dr. Li rated a "1;" and in the category of "social interaction," Dr. Li rated Plaintiff a "5" in all areas, except the "ability to ask simple questions and request assistance," in which Dr. Li rated Plaintiff a "1." (TR. 262-263). Dr. Li diagnosed Plaintiff with schizophrenia and bipolar disorder with psychosis. (TR. 264). These diagnoses were based on Dr. Li's clinical observations of Mr. Forssell which showed paranoia and poor insight and judgment. (TR. 264).

On the RFC form, Dr. Li rated Plaintiff in three areas—"occupational functioning," "performance adjustments—adaptive functioning," and "personal—social functioning." (TR. 267-268). The rating scale for the RFC ranged from 0-20, with 0 reflecting no limitation; 1 reflecting a "mild" limitation; 2-3 reflecting a "moderate" limitation; 4-7 reflecting a "marked" limitation; 8-13 reflecting a "severe" limitation; 14-19 reflecting an "extreme" limitation; and 20 reflecting a "total" limitation, or a complete inability to perform the designated task. (TR. 265). In the category of "occupational functioning," Dr. Li rated Plaintiff a "1" in the abilities to: "relate to co-workers," "remember locations," and "understand, remember, and carry out very short and simple instructions." (TR. 265-266). Dr. Li rated Plaintiff a "2" in the abilities to "follow work rules," "interact with supervisors," and "function independently." (TR. 265). Dr. Li rated Plaintiff a "4" in the ability to "deal with work stresses." (TR. 265). In the remaining 16 areas in this category, Dr. Li rated Plaintiff as having "severe" or "extreme" limitations. (TR. 266).[2] In the

---

[2] Dr. Li did not rate Plaintiff in his abilities to: "avoid undue construction of interests" and "demonstrate reliability." (TR. 267).

6

category involving "performance adjustments—adaptive functioning," Dr. Li rated Plaintiff as having "extreme" limitations in all 7 areas. (TR. 267). Finally, in the category of "personal—social functioning," Plaintiff rated Plaintiff a "1" in his ability to "ask simple questions and request assistance," and rated Plaintiff as having "severe" or "extreme" limitations in the remaining five areas of ability. (TR. 268).

In each of the three categories, the RFC form instructed the evaluator to total the numerical value, multiply that number by 5, divide that number by 27, to reach a total percentage of limitation, which was then added to the other categories to reach a "combined adjusted percentage of overall dysfunction." (TR. 267-268). Dr. Li did not complete the mathematical portion of the RFC, opting only to numerically rate each individual ability. (TR. 265-268).

### C. No Error in the ALJ's Consideration of Dr. Li's Opinions

The ALJ considered the MSA and RFC forms and ultimately gave the opinions "little weight," which is tantamount to rejection of the opinions. *See* TR. 20; *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). In doing so, the ALJ provided four rationales: (1) an inconsistency with Dr. Li's contemporaneous treating records; (2) internal inconsistencies between the MSA and RFC; (3) Dr. Li's failure to utilize the mathematical formula to derive an "adjusted value" of dysfunction; and (4) a lack of supportive clinical and treating medical evidence.

Plaintiff argues: (1) rationales one and three triggered a duty to re-contact Dr. Li, which the ALJ failed to do, (2) the ALJ improperly rejected Dr. Li's opinions by relying on

7

an inconsistency with contemporaneous treating records, (3) the ALJ improperly rejected Dr. Li's opinions by relying on the ALJ's failure to employ a mathematical calculation in the RFC, and (4) the ALJ engaged in improper selective review of the evidence. (ECF No. 17:5-8).[3] The Court finds no merit in these arguments.

### 1. The ALJ's Duty to Re-Contact Dr. Li

As stated, the ALJ discounted Dr. Li's opinions, in part, by citing an inconsistency with the opinions outlined in the MSA and RFC and the psychiatrist's contemporaneous treating records. (TR. 20). By means of explanation, the ALJ noted that although Dr. Li had found "extreme" limitations in numerous areas in the MSA and RFC, her treating records indicated that she had only refilled the same regimen of three medications at each office visit rather than making any other modifications or trying other medications. (TR. 20). The ALJ also noted that Dr. Li had failed to utilize the mathematical formula to derive an "adjusted value" of dysfunction on the RFC form, stating: "Dr. Li neglected to follow the math formulations as directed and omitted several categories from consideration, which would have skewed the results." (TR. 19-20).

---

[3] Mr. Forssell begins his argument by noting that "The proper method for evaluating a treating physician's opinion . . . is to determine if the opinion is due controlling weight." (ECF No. 17:5). To the extent Plaintiff is arguing that the ALJ failed to employ the initial step in evaluating Dr. Li's opinion, the Court would agree, *see* TR. 19-20, but conclude that the error is harmless because the ALJ had continued through the remainder of the analysis. *See Andersen v. Astrue*, 319 F. App'x 712, 720, n. 4, 721 (10th Cir. 2009).

Citing 20 C.F.R. § 416.920b(b),[4] Mr. Forssell argues that these rationales, which relied on "inconsistencies" required the ALJ to re-contact Dr. Li and the ALJ's failure to do so constituted legal error. *See* ECF No. 17:6 (Plaintiff's argument that the ALJ's reliance on "what appears to be an inconsistency in Dr. Li's record and her Medical Source Statement and RFC . . . is one of the reasons for re-contacting [Dr. Li]" which the ALJ failed to do); ECF No. 17:7 (Plaintiff's argument describing the ALJ's reliance on Dr. Li's improper use of the math formulations on the RFC as a "lack of consistency [which] is one of the reasons for re-contacting [Dr. Li]."). Federal regulations and Tenth Circuit case law dictate a rejection of Plaintiff's arguments.

20 C.F.R. § 416.920b(b) states:

> If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have.

20 C.F.R. § 416.920b(b). This subsection, which addresses "inconsistencies," does not mandate that the physician be re-contacted if the record contains an inconsistency, rather it requires that the ALJ weigh the remaining evidence to determine disability. 20 C.F.R. § 416.920b(b). A separate regulation, 20 C.F.R. § 416.920b(c), addresses the ALJ's duty to re-contact a medical source, which is triggered in the event that the ALJ has insufficient evidence to determine disability. *See* 20 C.F.R. § 416.920b(c). Tenth Circuit case law affirms this position.

---

[4] Mr. Forssell actually cited 20 C.F.R. § 416.920(b), but after examining the regulations, the Court believes that Plaintiff meant to cite 20 C.F.R. § 416.920b(b). *Compare* ECF No. 17:6-7 *with* § 416.920(b) and § 416.920b(b).

In *White v. Barnhart,* 287 F.3d 903, 907–08 (10th Cir. 2001), the court held that the ALJ has a duty to "recontact a treating physician when the information the doctor provides is inadequate to . . . . determine whether you [the claimant] are disabled." (alteration in original) (internal citation omitted). In *White*, the plaintiff argued that the ALJ had a duty to recontact a physician for clarification of an opinion that the ALJ had rejected. *Id.* at 908. The Court disagreed, noting "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the "evidence" the ALJ "receive[s] from [the claimant's] treating physician" that triggers the duty. *See id.* The ALJ in *White* believed the information he received from the treating physician was "adequate" for consideration; that is, it was not so incomplete that it could not be considered. *See id.*

Here, the ALJ may have relied on an "inconsistency" between Dr. Li's MSA/RFC forms and her treating records,[5] but 20 C.F.R. §916.920b(b) and *White* do not stand for the proposition that ALJ's reliance on an "inconsistency" triggered a duty for the ALJ to re-contact Dr. Li. The duty to re-contact is only triggered if the ALJ believes that the evidence in the record was insufficient or inadequate to determine disability. Here, the ALJ weighed opinions from a consultative examiner, two State Agency physicians, and Plaintiff's primary care physician. (TR. 16-20). The ALJ apparently believed the record

---

[5] As stated, Plaintiff argues that the ALJ's rationale involving Dr. Li's failure to employ a mathematical formulation in determining the RFC was an "inconsistency." *See supra*. The Court disagrees with Plaintiff's characterization, but even if the rationale qualified as relying on an "inconsistency," the duty to re-contact Dr. Li would still not have been triggered. *See supra*.

contained sufficient evidence to render a decision and the Court will not conclude otherwise.

### 2. The ALJ's Reliance on an "Inconsistency" Between the MSA & RFC and Dr. Li's Treating Records

As stated, the ALJ discounted Dr. Li's opinions, in part, by citing an inconsistency with the opinions outlined in the MSA and RFC and the psychiatrist's contemporaneous treating records, noting that despite the "extreme" limitations, Dr. Li continued Plaintiff's medication regimen without modification or trying other medications. (TR. 20). Mr. Forssell challenges the substance of the rationale, arguing:

> The ALJ notes that Dr. Li only continued to prescribe the same medication to Claimant in spite of his condition. The ALJ opines that this makes no sense if Claimant were really as bad as Dr. Li stated. But what the ALJ ignores, but should note, is that Dr. Li *increased* Claimant's prescription dosages of the medications on multiple occasions. Failure to recognize this leads the ALJ to mistakenly believe Dr. Li is perfunctory in her care of Claimant, and that Claimant is not as impaired as is reflected in Dr. Li's medical statements.

(ECF No. 17:6-7) (internal citations omitted) (emphasis in original).[6]

Essentially, Mr. Forssell is asking the Court to find error in the ALJ's failure to comment on the fact that Dr. Li had increased Plaintiff's medications multiple times. But Plaintiff does not explain how an increase in Plaintiff's medications would have possibly rendered a different outcome in the case. Furthermore, the ALJ was justified in

---

[6] Plaintiff also states that State Agency psychologist, Dr. Lisa Swisher "notes what appears to be an inconsistency in Dr. Li's records and her medical source statement." (ECF No. 17:6). Indeed, Dr. Swisher makes this finding, *see* TR. 57, but the ALJ does not rely on this portion of Dr. Swisher's opinion in weighing the evidence. *See* TR. 18-19.

commenting on the fact that Dr. Li did not prescribe Plaintiff different medications or try an alternative means of treatment, as those facts are accurately reflected the record. *See* TR. 252-261, 269-277. Accordingly, the Court rejects this challenge.

### 3. The ALJ's Reliance on Dr. Li's Failure to Employ a Mathematical Formula in Determining Plaintiff's RFC

As noted, the RFC form required a series of mathematical calculations to obtain a percentage which is then attributed to the individual's "overall dysfunction." *See supra*; TR. 267-268. The ALJ correctly noted that Dr. Li did not engage in the computation, but instead only rated each area of limitation from 0-20, numbers which correlated with a specific level of limitation. *See* TR. 19, 20, 266-268. Plaintiff challenges the ALJ's rationale, stating:

> In his opinion, the ALJ states that Dr. Li miscalculated the formula for the report, and that the extreme limitations should at most be marked and severe in nature. Assuming *arguendo* Dr. Li's extreme limitations should be that Claimant was limited to marked to severe limitations in his functioning, this would still clearly eliminate Claimant as being capable of competitive work.

(ECF No. 17:7). Plaintiff's argument suffers from two fatal flaws. First, Mr. Forssell has inaccurately represented the ALJ's findings. Nowhere in the opinion did the ALJ find that "the extreme limitations should at most be marked and severe in nature." Instead, the ALJ found that Dr. Li had failed to apply the mathematical formula and had omitted rating certain categories, which "would have skewed the results." (TR. 19-20).

Second, Plaintiff asks the Court to assume findings not in evidence to reach a result which would be in his favor. The Court cannot do this because: (1) the findings do not

12

exist and (2) even if they did, the Court cannot re-weigh the evidence to reach a result which differs from that given by the ALJ. *See Vigil*, 805 F.3d at 1201 (noting that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

### 4. The ALJ's Allegedly Improper Selective Review of Dr. Li's Opinions

Finally, Mr. Forssell argues that the ALJ engaged in improper selective review of Dr. Li's opinions. (ECF No. 17:7). According to Plaintiff, "the ALJ barely mentions, and fails to fully discuss, the numerous abnormal findings from Dr. Li's mental exams, including but not limited to abnormal thought patterns, paranoia, and hallucinations[.]" (ECF No. 17:7). Accordingly, Plaintiff contends: "The ALJ is picking and choosing evidence only that would tend to support his outcome and ignoring evidence supportive of a finding of disability." (ECF No. 17:7) (internal citations omitted). The Court rejects Plaintiff's argument.

The Tenth Circuit Court of Appeals has stated: "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (internal citation omitted).

13

Here, the ALJ stated that he had carefully considered all the evidence. (TR. 11). Even so, Plaintiff contends that the ALJ failed to discuss Dr. Li's findings of abnormal thought patterns, paranoia, and hallucinations. But the ALJ was only required to discuss "significantly probative" evidence he had rejected. Dr. Li's notations that Plaintiff suffered abnormal thought patterns, paranoia and hallucinations are not accompanied by any clinical findings or explanations. (TR. 254, 257, 259, 269, 270, 275.). Accordingly, the Court concludes that the findings are not significantly probative. Furthermore, Plaintiff has failed to meet his burden regarding the probative value of the evidence, because he has failed to explain how these findings would have affected his ability to work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the burden is on claimant to establish disability in the first four steps of sequential analysis); *Kirkpatrick v. Colvin*, No. 15-6223, 2016 WL 5920745, at *2 (10th Cir. Oct. 11, 2016) (rejecting plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how [the RFC's] restrictions fail to account" for his impairments and "it isn't our obligation to search the record and construct a party's arguments"). Accordingly, the Court rejects Plaintiff's argument regarding the ALJ's alleged selective review of the evidence.

## VI. STEP FIVE

As part of the RFC, the ALJ concluded that Plaintiff could only "understand, remember, and carry out simple, routine, and repetitive tasks." (TR. 15). With these limitations, the VE identified three jobs from the DOT which she deemed the Plaintiff

capable of performing: (1) Dishwasher, DOT #318.687-010; (2) Cart Attendant, DOT #920.687-014; and (3) Laundry Worker, DOT #361.684-014. (TR. 35). The ALJ adopted the VE's testimony and concluded that Mr. Forssell was not disabled based on his ability to perform the identified jobs. (TR. 21).

The DOT defines occupations, in part, by the "reasoning level" required to perform the occupation. Reasoning levels describe a job's requirements regarding understanding instructions and dealing with variables. These levels range from one to six, with one being the simplest and six the most complex. Reasoning level two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer. As noted by Plaintiff, all three jobs the ALJ relied on at step five require reasoning level two. *See* DOT #318.687-010 (Dishwasher), DOT #920.687-014 (Cart Attendant), and DOT #361.684-014 (Laundry Worker).

Mr. Forssell argues that his limitation to jobs involving only the ability to "understand, remember, and carry out simple, routine, and repetitive tasks" conflicts with reasoning level two, which is required of the identified jobs. (ECF No. 17:9-12). Accordingly, Plaintiff alleges a lack of substantial evidence to support the step five findings. (ECF No. 17:9-12). The Court disagrees with Mr. Forssell.

At step five, the ALJ must "investigate and elicit a reasonable explanation for any conflict" between the DOT and a VE's testimony. *Haddock v. Apfel*, 196 F.3d 1084, 1091

15

(10th Cir. 1999). In *Hackett v. Barnhart*, the Tenth Circuit held that a limitation to "simple and routine work tasks" "seems inconsistent with the demands of level-three reasoning" and "appears more consistent" with level-two reasoning. *Hackett*, 395 F.3d at 1176. Courts have consistently relied on *Hackett* in finding a conflict between a limitation to "simple" tasks and jobs with reasoning level three. *See, e.g.*, *Paula v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished).[7] Additionally, in *Stokes v. Astrue*, the Tenth Circuit stated that a limitation to "simple, repetitive, and routine work" "is consistent with the demands of level-two reasoning." Stokes, 274 Fed. Appx. 675, 684 (10th Cir. 2008). *Stokes* rejected the claimant's argument that a limitation to "simple, repetitive, and routine work should be construed as a limitation to jobs with reasoning level-rating of one." *Id.*

In this case, the ALJ limited Mr. Forssell to performing simple, routine, and repetitive tasks. As stated, reasoning level two requires carrying out "detailed but uninvolved written or oral instructions" and dealing with "a few concrete variables in or from standardized situations." *See supra*. Pursuant to *Hackett* and *Stokes*, Mr. Forssell's

---

[7] In his Reply Brief, Mr. Forssell cites *Paulek* to support his position because *Paulek* cites an Eighth Circuit case, *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997) for the proposition that "simple instructions [are] inconsistent with both level-two and level-three reasoning." (ECF No. 22:2) (citing *Paulek*, 662 F. App'x at 909.) But the Tenth Circuit in *Paulek* does not affirmatively adopt *Lucy*, rather it notes the Eighth Circuit's position and states that the Tenth Circuit "h[as]not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions[.]" *Paulek*, 662 F. App'x at 594. Mr. Forssell also alleges error, noting that *Paulek* requires the ALJ to elicit an explanation for any conflict between the VE's testimony and the DOT and arguing that *Paulek* and *Lucy* support a finding of conflict. (ECF No. 22:2-3). The Court agrees with the duty to investigate any conflict, but here no conflict existed, thus no subsequent error occurred. *See infra*.

limitations do not inherently conflict with reasoning level two. *Hackett*, 395 F.3d at 1176; *Stokes*, 274 Fed. Appx. at 684. Accordingly, the Court rejects Plaintiff's contrary argument.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on December 7, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE